**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: TANYA A. ST. FELIX, | : | |
| | : | Chapter 13 |
| Debtor. | : | |
| | : | |
| | : | Bky. No.  06-10713 ELF |
| | : | |

# M E M O R A N D U M

**I.**

The Clerk of this court presently holds $6,337.91 in the court registry. There is no dispute that the funds belong to Tanya St. Felix, the chapter 13 debtor in this case ("the Debtor" or "St. Felix").

St. Felix, acting through her <u>attorney-in-fact</u> Dale B. Kennedy ("Kennedy"), of American Property Locators, Inc. ("APL"), has filed a motion ("the Motion"), through counsel retained by APL, requesting the entry of an order directing that the funds in court registry be returned to the Debtor. (Doc. # 65). <u>See</u> 28 U.S.C. §2042. Kennedy requests that the refund check be made out to him and sent to APL. St. Felix, acting through her <u>attorney-at-law</u> ("the Debtor's counsel" or "bankruptcy counsel"), opposes the Motion.

A hearing on the Motion was commenced on August 24, 2010 and concluded on September 21, 2010. St. Felix appeared at the September 21st hearing with her bankruptcy counsel in opposition of the Motion. After the conclusion of the hearing, I took the matter under advisement.

For the reasons set forth below, I will grant the Motion, but direct the Clerk to send the funds directly to the Debtor and not to her attorney-in-fact.

**II.**

The Debtor commenced this chapter 13 bankruptcy case on February 24, 2006. By order dated September 19, 2006, the court confirmed the Debtor's chapter 13 plan, as amended on June 9, 2006 ("the Plan"). (See Doc. #'s 21 & 33). The Plan provided for the Debtor to pay the Chapter 13 Trustee ("the Trustee") $500.00 per month for 36 months, for a total of $18,000.00. (See Doc. # 2). The Plan provided the cure of the prepetition arrears on the Debtor's residential mortgage and for full payment of "all timely filed unsecured claims." (See Doc. # 21).

As it turned out, the Plan was overfunded, based on the amount of the claims actually filed in the case. In addition, for reasons that are not explained, the Debtor paid the Trustee more than the $18,000.00 required under the Plan. As a result, the Trustee determined that, after full payment of the allowed claims, the allowed professional compensation and the Trustee's statutory commission, the Debtor was entitled to a refund of $6,337.91.[1]

At some point in early 2010, the Trustee mailed a refund check to the Debtor. The postal service returned that check to the Trustee.[2] On April 16, 2010, the Trustee delivered $6,337.91 to the Clerk. This payment into the court registry was noted on the case docket and notice of the docket entry was sent electronically to the Debtor's counsel. (See Docket Unnumbered Entry

---

[1] Unsecured claims totaling $2,982.71 and a mortgage arrears claim of $8,859.89 were filed and allowed. In addition, the court allowed Debtor's bankruptcy counsel $1,500.00 in compensation and the Trustee calculated his statutory commission to be $1,043.49. The Debtor paid a total of $20,750.00 to the Trustee. (See Doc. # 62).

[2] When the Debtor commenced this case, her mailing address was 7437 Rhoads Street, Philadelphia, PA, 19151. On March 13, 2009, the Debtor's counsel filed a praecipe, notifying the Clerk that the court's records should be amended ro reflect the Debtor's new address, 1600 Garrett Road, Apt. I-106, Upper Darby, PA 19082. (Doc. # 58). It appears that the Trustee did not update his records and mailed the refund check to the Debtor's prior address.

-2-

dated April 16, 2010).  The Debtor's counsel took no action to retrieve or otherwise address the placement of the Debtor's funds into the court registry.

On May 27, 2010, the Trustee filed his proposed Final Report.  (Doc. # 62).  The Final Report referred to the $6,337.91 as an "amount refunded to debtor."  The Final Report was served on the Debtor's counsel electronically.  (See id.).  Again, the Debtor's counsel took no action with respect to his client's funds in the court registry after the Trustee filed his Final Report.

On June 10, 2010, Kennedy sent a letter to St. Felix on APL letterhead ("the Letter") that stated:

> Our company researches government records and **we have located unclaimed funds of approximately $6,337.91 that appear to belong to Tanya St. Felix**.  These funds are due, but unclaimed because *the government agency holding the funds was unable to find you*.  The government is not required to search for you after the initial attempt to deliver the funds.

Motion, Exhibit "A" (bold and underline in original, italics added).

In the Letter, Kennedy also advised St. Felix that he could "begin to get the funds for [her]" as soon as she countersigned the letter and returned it to him by mail or fax, after which he would send her some documents "that are required by the government agency holding funds in order for us to make application for the funds."  The Letter proposed a "split of the potential recovery," two-thirds to the Debtor and one-third to APL.

St. Felix countersigned the Letter and returned it to Kennedy.  On June 24, 2010, the Debtor executed a "Limited Power of Attorney" ("the POA").[3]  In the POA, the Debtor appointed

---

[3] At the hearing on the Motion, St. Felix did not dispute the authenticity of her signature on either the Letter or the POA.

Kennedy as her attorney-in-fact

> **"Only to recover cash or cash equivalents specifically arising from the Tanya A. St. Felix bankruptcy matter that belong to [St. Felix].**

(emphasis in original). The POA provides that it shall remain in effect for one year or until the unclaimed funds are recovered and remitted to St. Felix, whichever is sooner.

On July 9, 2010, Kennedy filed the Motion. On September 2, 2010, the Debtor, acting through her bankruptcy counsel, filed a response to the Motion, objecting to the distribution of any funds to APL. (See Doc. # 71).

### III.

A power of attorney is "an instrument granting someone authority to act as agent or attorney-in-fact for the grantor." Black's Law Dictionary at 1209 (8th ed. 2004). An attorney-in-fact is someone "who is designated to transact business for another; a legal agent." Id. at 138; see also 20 Pa. C.S. §5601(f) (employing the term "agent" to refer to someone designated in a power of attorney to act on behalf of a principal).

In this case, there is no dispute that the Debtor executed the POA. The POA appointed Kennedy as the Debtor's attorney-in-fact and authorized Kennedy to collect the money in the court registry.[4] Pursuant to the power of attorney, Kennedy hired separate counsel and filed the

---

[4] The Debtor questions the validity of the POA. She contends that it should be disregarded because it was obtained through a misleading solicitation (i.e., the Letter). In particular, the Debtor contends that the statement in the Letter that "the government agency holding funds was unable to find you" was misleading because the entity that was unable to find the Debtor was the Trustee and the Trustee is not a "government agency." She reasons that the misleading statement led her to believe that the funds involved were some type of government benefit and obscured the fact that the funds referenced were her bankruptcy plan payments. At the hearing, the Debtor also argued that APL's solicitation of a
(continued...)

Motion.

In the circumstances presented here, the Debtor's opposition to the Motion necessarily must be considered as an attempt to revoke the POA.  See Restatement 3d of Agency §1.03(e), cmt. e. (2006) ("Restatement") ("a manifestation may be made by conduct alone or by conduct that carries meaning at odds with words expressed previously or simultaneously"); id. §3.10, cmt. c. ("manifestations [of revocation] may be made indirectly as well as directly and implicitly as well as explicitly"); see also  Security Servs., Inc. v. K Mart Corp., 996 F.2d 1516, 1523 (3d Cir. 1993), aff'd, 511 U.S. 431 (1994) (principal's conduct that is inconsistent with agency relationship may manifest revocation).  The question is whether the Debtor's attempted revocation the POA is legally effective.

The general rule in Pennsylvania has long been that a principal has the right to revoke the authority granted to an attorney-in-fact under a power of attorney; however, a power of attorney that is "coupled with an interest" is irrevocable.  E.g., Blackstone v. Buttermore, 53 Pa. 266 (Pa. 1866); Appeal of Hartley, 53 Pa. 212 (1866); Provident Life & Trust Co. v. Spring Garden Ins. Co., 53 Pa. Super. 66 (1912); Yingling v. West End Improvement Co., 1896 WL 3540 (C.P. Lehigh 1896).  Also, as a general rule, a principal has the right to revoke an agent's authority to act on the principal's behalf even though the revocation may be in violation of a contract between the parties.  Insurance Adjustment Bureau v. Allstate Ins., 860 A.2d 1038, 1042 (Pa. Super. Ct.

---

[4](...continued)
debtor who is represented by counsel in an open bankruptcy case to retain APL to provide services in connection with the bankruptcy case is against public policy and should not be permitted by the court.

Because I decide this dispute on other grounds, I express no view on either of these arguments.  For purposes of the remaining discussion in this Memorandum, I will assume arguendo that the POA was valid.

2004), rev'd on other grounds, 905 A.2d 462 (Pa. 2006); Dorn v. Stanhope Steel, Inc., 534 A.2d 798, 803 (Pa. Super. Ct. 1987); Restatement §3.10(1).

It is not always simple to discern whether a power of attorney is "coupled with an interest." In Hartley, the court described the concept as follows: "there must co-exist with the power an interest in the thing or estate to be disposed of or managed under the power." 53 Pa. at 212.

Perhaps the clearest example of coupling a power of attorney with an interest arises when the principal and agent are also in a debtor-creditor relationship. Thus, if the principal/debtor grants powers to the agent/creditor for the agent to use as a means of securing performance of the principal's duties, the power has been coupled with an interest. The Restatement sets forth a simple fact pattern illustrating the point:

> P owns Blackacre, which is situated next to Whiteacre, on which P operates a restaurant. To finance renovations and expansions, P borrows money from A. A written agreement between P and A provides that A shall irrevocably have P's authority to transfer ownership of Blackacre to A in the event P defaults on the loan. A has a power given as security.

Restatement §3.12, Illustration No.1.

On the other hand, an "interest" must be distinguished from a simple right to compensation for purposes of the exception to the general rule of revocability.

> [T]he interest which the agent has in receiving compensation for performance of the agency, even though it is agreed that his compensation shall be derived from what is produced by the application of his services to the subject matter of the agency or shall consist of a stated portion thereof, does not support a claim of a power coupled with an interest so as to bar revocation of the agency or power. Such arrangements bestow an interest in the proceeds of the subject matter of the agency rather than in the subject matter itself, and the interest does not coexist with the power since it arises only by reason of the exercise and extinguishment of the power.

28 A.L.R. 2d 1243, §6 (cumulative supplement); accord Comment, Powers Coupled With An Interest, 39 Yale L.J. 110, 117 n.11 (1929) ("Profit to an agent by way of compensation for his services, even a share of the proceeds of a sale or collection to be made by him, is not a sufficient 'interest' to make the authority irrevocable").

The principle stated in the American Law Reports quotation above was applied almost 150 years ago in Hartley and has not been disturbed by the Pennsylvania Supreme Court since then. Thus, under Pennsylvania law, an agency relationship in which a principal appoints an agent to collect money[5] or sell property[6] and provides for the agent to be compensated from the fund created by the successful completion of the agency task is not the grant of a power coupled with an interest, unless there is some separate conveyance of a property interest in the form of an assignment of a property interest.[7]

Application of this principle to the present case is straightforward. The Debtor contracted to retain APL to retrieve the unclaimed money that the Trustee placed in the court registry. To facilitate APL's ability to achieve the goal of the agency relationship, the Debtor granted APL certain powers in the POA. However, she did not assign to APL any property interest in the

---

[5] See Buttermore, 53 Pa. at 266 ("it would be the height of injustice if the power should be held to be irrevocable merely to secure the agent for his outlay or his services rendered");

[6] See McMahan v. Burns, 65 A. 806 (Pa. 1907); Yingling, 1896 WL at 3540.

[7] See Insurance Adjustment Bureau, 905 A.2d at 482-83 (grant of demurrer to complaint reversed on appeal where contract establishing parties' agency relationship was ambiguous and could be read to include "an assignment for purposes of security"); In re Keys' Estate, 20 A. 710 (Pa. 1890) (power of attorney not revocable because power was granted with assignment of right to apply money collected to debt already owed by the principal to the agent).

unclaimed money itself; she merely promised to pay APL one-third of the amount retrieved as compensation. Therefore, the POA was not coupled with an interest and it is revocable. Because the POA is revocable and St. Felix has clearly manifested a desire to revoke it, the money in the court registry must be returned directly to the Debtor and not to APL.[8]

An order consistent with this Memorandum will be entered.

Date:   October 4, 2010

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

-8-

---

[8] The only issue decided here is whether the Clerk should deliver the funds presently in the court registry to St. Felix or to Kennedy. This ruling is without prejudice to any claim, such as breach of contract, that APL may have against the Debtor based on the Letter. I offer no opinion on that subject. See n.4, supra.